**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**COMCAST OF FLORIDA/GEORGIA/PENNSYLVANIA, L.P.,**

      **Plaintiff,**

v.                                      **Case No:   6:12-cv-1671-Orl-31KRS**

**AVALON PARK PROPERTY OWNERS ASSOCIATION, INC.,**

      **Defendant.**

## ORDER

This matter is before the Court on Plaintiff Comcast of Florida/Georgia/Pennsylvania, L.P.'s ("Comcast") Motion for Partial Summary Judgment as to liability (Doc. 27) ("Comcast's Motion") and Avalon Park Property Owners Association, Inc.'s ("Avalon") Motion for Partial Summary Judgment (Doc. 31) ("Avalon's Motion"). Also before the Court are Comcast's Response in Opposition to Avalon's Motion (Doc. 39), Avalon's Reply in Support of its Motion (Doc. 42), Avalon's Response in Opposition to Comcast's Motion (Doc. 38) and Comcast's Reply in Support of its Motion (Doc. 43).

**I.     The Facts**

In 1999 Comcast[1] entered into a bulk cable service agreement with Avalon. (Doc. 27-2 (the "Agreement")).The initial term of the Agreement was ten years, but it was extended until December

---

[1] The entity that entered into the agreement was Comcast's predecessor in interest, however, there is no dispute that the agreement eventually formed a binding contract between Avalon and Comcast. No legal issues turn on this distinction, therefore the Court will refer to the events surrounding the formation of the agreement as occurring between Avalon and Comcast.

31, 2011. The Agreement contained two provisions that are in dispute here, both of which gave Comcast some advantage in securing a new contract with Avalon. The first was a 60 day period prior to the termination of the Agreement during which Avalon could not negotiate with another cable provider ("Exclusive Negotiation Provision"). The Second provision gave Comcast a right of first refusal, allowing it to match any proposal offered by a competing cable provider ("First Refusal Provision"). These are both within § 6 of the Agreement, which provides:[2]

> For a period of sixty (60) days prior to the termination or expiration of this Agreement, Company shall have the exclusive right to negotiate with Association for the provision of cable service at the Premises by Company. If an Agreement can not be reached between Company and Association within such sixty (60) day period, Association shall then be free to negotiate with any other video programming distributor for service at the Premises, provided, however that prior to entering into an agreement with any such other distributor, Association shall first offer to Company the right to enter into an agreement with Association on the same terms and conditions as the proposed agreement with such other distributor. If Company fails to accept such an offer within (10) days of Company's receipt of such offer, Association may enter into an agreement with such other distributor on the same terms and conditions offered to Company.

(Doc. 27-2).

In 2010 Avalon began considering alternative bulk cable plans and in August, 2010 Avalon hired a consultant, John Russo of Broadband Consulting Group, Inc., to assist with its choice of a new cable provider. In November 2011, Mr. Russo requested retail rate information from Bright House Networks, LLC ("Bright House"). With the Agreement terminating on December 31, 2011,[3] and with no new cable agreement in place, Avalon and Comcast agreed to continue their arrangement on a month-to-month basis going into 2012.

---

[2] The Agreement refers to Comcast as the "Company" and Avalon as the "Association."

[3] By letter dated March 14, 2011 Avalon advised Comcast that it would not renew the Agreement. Comcast does not dispute that the Agreement terminated on December 31, 2011.

After January 1, 2012, Avalon negotiated with Bright House and, at various times, informed Comcast of the terms of a proposed Bright House agreement pursuant to the right of first refusal. By March 5, 2012, Avalon and Bright House reached an agreement on the material terms of a new cable agreement. On that date, Avalon sent the Bright House proposal to Comcast with a letter stating: "Enclosed please find a Bulk Cable Agreement which has been proposed by Brighthouse [sic] Networks. Consistent with the right of first refusal provision, Comcast has ten (10) days to consider the proposed agreement with Brighthouse [sic]. We look forward to Comcast's reply." (Doc. 27-21). On March 16, 2012, Comcast did not accept the Bright House terms; rather it responded with a counteroffer which contained some materially different terms. Consequently, having ostensibly fulfilled its obligation to give Comcast the right of first refusal, Avalon entered into the contract with Bright House in June, 2012. By letter dated July 10, 2012 Avalon advised Comcast that their relationship would end on August 31, 2012, when Bright House became Avalon's cable provider.

## II.   The Claims

Comcast asserts that Avalon breached the Exclusive Negotiation Provision by "negotiating" with Bright House in November of 2011 when Mr. Russo requested rate information from Bright House. Comcast also claims that the month-to-month arrangement extended the exclusive negotiation period into 2012 and that Avalon, therefore, breached the contract by negotiating with Bright House during 2012. Comcast seeks summary judgment as to this issue, while Avalon only seeks summary judgment as to termination of the exclusive negotiation period on December 31, 2011. Both parties seek summary judgment as to whether Avalon breached the First Refusal Provision of the Agreement.

### III. Standard

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56. Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the nonmoving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

### I. Analysis

#### a. The 60 Day Exclusive Negotiation Provision

There is no evidence before the Court that Avalon negotiated with Bright House during the 60 day exclusive negotiation period. Rather it simply sought publicly available retail rate information (See Doc. 27-11 (e-mail string between John Russo and Bright House)). That request, however, does not constitute "negotiation" by any accepted meaning of the term. *See Institutional & Supermarket Equip., Inc. v. C & S Refrigeration, Inc.*, 609 So. 2d 66, 68 (Fla. Dist. Ct. App. 1992) ("Where words of a contract are clear and definite, they must be understood according to their

ordinary meaning."). But Comcast also contends that the 60 day period rolled-over into the new month-to-month arrangement, thus, prohibiting Avalon from negotiating with another cable provider until after their relationship ended.

Aside from changing the duration of the Agreement, the parties changed no other element of the Agreement and continued to operate as they had before. Under Florida law, when "an agreement expires by its terms and without more the parties continue to perform as before, an implication arises that they have mutually assented to a new contract containing the same provisions as the old." *Rothman v. Gold Master Corp.*, 287 So. 2d 735, 736 (Fla. Dist. Ct. App. 1974). Thus, during the month-to-month period, the parties were operating under month-long contracts that incorporated all applicable terms from the Agreement that could function within the shortened duration.

The Exclusive Negotiation Provision, however, no longer made sense within this abbreviated timeframe. The language of the Exclusive Negotiation Provision specifies that it lasts for 60 days ending contemporaneously with the termination of the Agreement. The provision does not suggest a proportion or percentage of the overall term of the Agreement. (Doc. 27-2 at 2). There is no way to read the specific wording of the Exclusive Negotiation Provision as calling for fewer than 60 days—to do otherwise would be to invent language and modify a basic term of the Agreement. *Jenkins v. Eckerd Corp.*, 913 So. 2d 43, 52 (Fla. Dist. Ct. App. 2005) (courts are prohibited from modifying unambiguous contract terms to make them more reasonable). Reading the month-long contracts as including the 60 day Exclusive Negotiation Provision would call for Avalon to abstain from negotiation prior to the beginning of each monthly agreement, which is untenable. Accordingly, this provision could not be a part of the month-to-month arrangement. *See*

*Petrou v. Wilder*, 557 So. 2d 617, 618 (Fla. Dist. Ct. App. 1990) (where two clauses of a contract are repugnant and conflict, the first shall stand and the latter fall).[4]

Accordingly, the Court finds as a matter of law that the exclusive negotiation period terminated on December 31, 2011, and that Comcast's Motion must be denied in this regard.

### b.  The Right of First Refusal Provision

The Bright House proposal was presented to Comcast on March 5, 2012 with an admonition that it had ten days to accept it. Comcast did not accept. Rather, on March 16, 2012, it sent a counter-proposal that contained materially different terms.[5] This constituted a rejection of the Bright House proposal and Avalon proceeded with finalizing its agreement with Bright House.

Comcast claims that the Bright House proposal presented by Avalon was illusory because it did not contain the indemnification agreement in which Bright House agreed to indemnify Avalon[6] in the event that Comcast filed suit. But, this provision is clearly unique to Bright House and would make no sense in a corresponding Comcast agreement. The First Refusal Provision cannot be viewed as requiring Comcast to indemnify Avalon against its own lawsuit. Such a reading would be an

---

[4] Section 6 of the Agreement sets forth the duration of the agreement first, and later gives the prohibitions under the Exclusive Negotiation Provision.

[5] Avalon has set forth these differences is its Motion, they are: 1) Comcast included a refund provisions for early termination while Bright House did not; 2) Comcast limited the number of years that it would fund community events while Bright House did not; 3) Comcast required binding arbitration while Bright House permitted both parties the right to access courts; 4) Bright House agreed to provide wireless internet access, while Comcast only agreed to good faith attempts to provide wireless internet access; 5) Comcast required 90 day notice of intent to not renew the contract while Bright House only required 60 days; 6) Bright House agreed to provide certain equipment and cable outlets for no charge while Comcast failed to include a matching provision; and 7) Bright House agreed to provide more channels that catered to the central Florida market, while Comcast did not match those channels. (*See* Doc. 31 at 15-18 (and accompanying citations to supporting documents)).

[6] The indemnification is specifically for costs, fees, and other obligations incurred as a result of a lawsuit brought by Comcast.

absurdity. *See Paddock v. Bay Concrete Indus., Inc.*, 154 So. 2d 313, 315-16 (Fla. Dist. Ct. App. 1963) ("Looking to the other provisions of a contract and to its general scope, if one construction would lead to an absurd conclusion, such interpretation must be abandoned and that adopted which will be more consistent with reason and probability."). Accordingly, the Agreement did not require Avalon to allow Comcast to match the indemnification agreement designed to protect against Comcast's own lawsuit.

Comcast also claims that the Bright House proposal sent to it on March 5, 2012 differed from the final contract based on the required lease date of office space. Specifically, Avalon insisted on a lease date earlier than was required in the contract, which was not disclosed to Comcast. The provision in the Bright House proposal sent to Comcast on March 5, 2012 provided:

> 3. <u>On-Site Customer Service Office</u>. BHN agrees to lease commercial office space in Avalon Park in order to provide a fully functional customer service office on the Premises (i.e.) for residents to pay bills, pick-up and return equipment, change service levels, report issues, etc [sic]) by August 1, 2013, subject to availability, BHN agrees to lease a minimum of 1,000 square feet and shall maintain the following hours with adequate staff: Monday through Friday 8:00 AM to 6:00 PM and Saturday 9:00 AM to 1:00 PM.

The final contract between Avalon and Bright House contained this exact wording. (*Compare* Doc. 27-21 *with* Doc. 27-26). While Avalon did insist on an earlier lease, it did not make that part of the contract—Bright House's acquiescence appears to be no more than business good will. Comcast was presented with the opportunity to match the same lease provision that Bright House ultimately agreed to and it did not. Thus, Avalon did not breach the First Refusal Provision.

It is therefore, **ORDERED** that:

Comcast's Motion (Doc. 27) is **DENIED** and Avalon's Motion (Doc. 31) is **GRANTED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on January 9, 2014.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party